**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEBBLE BEACH COMPANY,

    Plaintiff,

v.

MICHAEL CADDY,

    Defendant.

_____/

No. C 03-4550 PJH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

On February 25, 2004, a hearing was held on the motion of defendant Michael Caddy ("Caddy") to dismiss the above-entitled action for lack of personal jurisdiction and insufficiency of service of process. Plaintiff Pebble Beach Company ("Pebble Beach") appeared through its counsel Stephen Trattner, and Caddy appeared through his counsel Mikal Condon. Having read the papers and carefully considered the relevant legal authority and oral argument, the court hereby rules as follows.

**BACKGROUND**

Pebble Beach is a world famous golf resort located in Monterey County, California. Pebble Beach has used "Pebble Beach" as its trade name for over 50 years, and the name has acquired secondary meaning in the U.S. and Great Britain. Pebble Beach operates a website, located at www.pebblebeach.com. Pebble Beach owns the U.S. federal registrations for the "Pebble Beach" service mark for resort, hotel, restaurant and bar services.

Caddy, a dual citizen of the United States and the United Kingdom, runs a bed-&-breakfast ("B&B"), restaurant and bar, which he has named "Pebble Beach," in Barton-on-Sea, England. Caddy advertises these services at his website, www.pebblebeach-uk.com,

which includes general information about the accommodations, including lodging rates in pounds sterling, and a menu, which offers some California wines. Should they have questions about the B&B's services, webpage visitors may fill out an on-line inquiry form; however, the website does not have a reservation system, nor does it allow for potential guests to book rooms on-line. According to the general manager of the "Café Restaurant Bar," Sophie Casey, the Café is located on a cliff overlooking the "pebbly beaches" of Barton-on-Sea. Before he opened his B&B on England's southern shore, Caddy had worked at a golf resort in Carmel, California, located near the Pebble Beach resort.

Pebble Beach has brought an action for federal and common law service mark infringement, trade name infringement, false designation of origin and dilution under the Federal Trademark Act of 1946 and the California Business and Professions Code. Caddy now moves to dismiss this complaint for lack of personal jurisdiction and insufficiency of service of process. Because the court finds that it does not have jurisdiction over Caddy, the court does not reach the motion to dismiss for insufficiency of service of process.[1]

**ANALYSIS**

Caddy argues that this court may not assert personal jurisdiction over him, and therefore moves to dismiss Pebble Beach's complaint pursuant to Federal Rule of Civil Procedure (each, a "Rule," together, the "Rules") 12(b)(2). Pebble Beach disagrees, arguing that Caddy's aggregate contacts with the United States are sufficient to allow this court to assert jurisdiction over Caddy pursuant to Rule 4(k)(2).[2]

A.   Legal Standard

On a motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of

---

[1] All other motions by the parties currently pending before the court are rendered moot as a result of the court's finding that jurisdiction is improper.

[2] At the hearing, counsel for Pebble Beach made arguments in support of specific personal jurisdiction based on Rule 4(k)(2), and abandoned the argument that jurisdiction is proper under the traditional specific personal jurisdiction analysis. The court would come to the same conclusion that it reaches today under Rule 4(k)(2) as it would if it applied a traditional specific personal jurisdiction analysis. Moreover, Pebble Beach did not assert general personal jurisdiction.

2

demonstrating that the court has jurisdiction over defendant. See, e.g., Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clement Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003). "The plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss;" that is, Pebble Beach need only demonstrate facts that if true would support jurisdiction over Caddy. Doe v. Unocal, 248 F.3d 915, 922 (9th Cir. 2001) (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). Therefore, the court resolves all disputed facts in favor of Pebble Beach, and Pebble Beach's version of the facts is accepted as true unless controverted. Unocal, 248 F.3d at 922 (citations omitted).

Generally, personal jurisdiction can be asserted over a defendant if permitted by a state's long-arm statute, and if doing so will not violate due process. See Fireman's Fund Ins. Co. v. National Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996). For due process to be satisfied, a defendant, if not present in the forum, must have minimum contacts with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." See International Shoe Co. v. State of Washington, 326 U.S. 310, 315 (1945).

In some circumstances, however, personal jurisdiction is proper when a defendant's aggregated contacts with the United States, but not the contacts with any single state, satisfy constitutional criteria. Nationwide aggregation of a defendant's contacts is proper if the defendant is sued under a federal statute authorizing worldwide service of process. See Go-Video Inc. v. Akai Elec. Co., 885 F.2d 1406, 1414 (9th Cir. 1989). Rule 4(k)(2) authorizes jurisdiction based on a defendant's national contacts in certain circumstances, when three conditions are met. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1126 (9th Cir. 2002). First, the cause of action must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Finally, the federal court's exercise of personal jurisdiction must comport with due process. Id. Contrary to the claims of Pebble Beach's counsel at the hearing, the examination of due process requires this court to determine whether exercise of jurisdiction

would be reasonable. Id. at 1127 n.7 (noting that had that court found sufficient national contacts under the 4(k)(2) analysis, it would still have had to conduct a Burger King v. Rudzewicz "reasonable analysis." 471 U.S. 462, 477 (1985)). In essence, Rule 4(k)(2) "provides for what amounts to be a federal long arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." Id. at 1126.

B.  Discussion

Here, the cause of action arises under the Lanham Act, satisfying the first prong of the test. The court assumes, for the sake of Pebble Beach's Rule 4(k)(2) argument, that Caddy is not subject to personal jurisdiction in any state court. Thus, in order for this court to assert personal jurisdiction over Caddy, the exercise of jurisdiction must comport with due process.

Pebble Beach argues that Caddy's aggregate contacts with the United States are sufficient to allow this court to assert jurisdiction over Caddy pursuant to Rule 4(k)(2). Specifically, Pebble Beach claims that Caddy's selection of a ".com" top level domain name targets the U.S. market as a whole, that Caddy is trading on Pebble Beach's famous marks and selling services to U.S. citizens and that Caddy is a U.S. citizen, and therefore subject to personal jurisdiction in this court.   When these factors are aggregated, Pebble Beach argues, the exercise of jurisdiction under 4(k)(2) is proper. The court disagrees.

First, Caddy's minimal national contacts are insufficient to confer jurisdiction. The mere selection of a ".com" top level domain name–especially when coupled with the "-uk" qualifier–is not enough for Caddy to be haled into this court from across the Atlantic. The choice of a ".com" top-level domain name, without more, is not evidence of targeting American consumers. Cf. Quokka Sports, Inc. v. Cup International Ltd., 99 F. Supp. 2d 1105, 1111-12 (N.D. Cal 1999) (finding jurisdiction proper where, among other things, the non-resident defendant had selected a ".com" top level domain name and admitted that the web address was a good domain name, "especially for the lucrative American market."). Furthermore, Caddy's website is almost exactly like the non-offending website in Cybersell, a case upon which plaintiff relies. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-20

4

(9th Cir. 1997) (finding registration of a domain name and posting of an essentially passive website insufficient to confer jurisdiction over a non-resident defendant, even though the web page solicited business from those who accessed the site).  Caddy's website allows prospective customers to make inquiries of Caddy, but the website has no reservation system, no place to purchase a weekend stay, and no advertising banner ads that target American consumers, qualitites that have been found to confer jurisdiction over non-resident defendants in similar cases.  See, e.g., Quokka Sports, 99 F. Supp. 2d at 1112.  Finally, Caddy's knowledge of Pebble Beach's existence does not advance Pebble Beach's argument.  Indeed, as plaintiff points out, Pebble Beach is world-famous, and the court can not support a finding of personal jurisdiction based on an individual's awareness of a world-famous mark.

Pebble Beach also claims that jurisdiction is proper under Rule 4(k)(2) because Caddy is an American citizen.  Pebble Beach relies heavily upon Blackmer v. U.S., 284 U.S. 421 (1932), to support its argument.  Blackmer involved a prosecution of an American citizen, Harry Blackmer, who had fled to France with a number of other prominent Americans after the discovery of the Teapot Dome scandal in 1923 (See F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1319-21 (D.C. Cir. 1980)) for a detailed history of the circumstances surrounding Blackmer).  To compel the testimony of these Americans in subsequent criminal proceedings, Congress passed the Walsh Act authorizing the federal district courts to compel the attendance of American witnesses abroad in connection with domestic criminal proceedings.  See Compagnie, 636 F.2d at 1320-21.  When Blackmer failed to respond to the properly served subpoenas requiring him to appear, he was found in contempt of court.  Blackmer, 284 U.S. at 433.  The Supreme Court affirmed the contempt conviction and upheld the Walsh Act against a due process attack on the grounds that Blackmer was a U.S. citizen.  Id. at 436.  With respect to the jurisdictional challenge, the Court stated, "for the exercise of judicial jurisdiction in personam, there must be due process, which requires appropriate notice of the judicial action and an opportunity to be

5

heard." Id. at 438.

The facts of this case are obviously different from those in Blackmer. Caddy is not fleeing a national scandal, nor is he a necessary witness in any pending criminal trial. Unlike the Walsh Act in Blackmer, Rule 4(k)(2) was not established for the sole purpose of asserting jurisdiction over Michael Caddy. Furthermore, Caddy is a dual citizen who makes his home in his other country of citizenship, England. Unlike Blackmer, Caddy has not been found guilty of any offense by any court, and the exercise of jurisdiction in order to enforce a punitive judgment or to force an appearance is distinguishable from the initial personal jurisdiction determination. Finally, taken to its logical extreme, Pebble Beach's argument assumes that an individual born abroad to at least one American parent, who may have never stepped foot on U.S. soil, could be haled into any federal district court based on his or her citizenship alone. The court is not willing to go that far.

Even if Caddy's American citizenship is a sufficient national contact to confer personal jurisdiction the court's exercise of jurisdiction must still be reasonable. Although the general Blackmer proposition that the U.S. may exercise jurisdiction based on a defendant's nationality has been constantly reaffirmed (See, e.g., U.S. v. Juda, 46 F.3d 961, 967 (9th Cir. 1995); Restatement (Third) of Foreign Relations Law of the United States, § 402 (1987)), the Ninth Circuit recognizes that the extraterritorial application of jurisdiction must still be reasonable. See, U.S. v. McAllister, 160 F.3d 1304, 1308-09 (9th Cir. 1998) (finding the extraterritorial application of a § 402 basis of jurisdiction reasonable under Restatement (Third) of Foreign Relations Law of the United States, § 403 (1987)). Moreover, under Rule 4(k)(2), if a defendant's national contacts are sufficient, the court must conduct a "reasonable analysis". See Glencore Grain, 284 F.3d at 1127 n.7.

To assess the reasonableness of exercising jurisdiction, courts consider the seven factors identified by the Supreme Court in Burger King: (1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home

state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum. Id. at 1125. Even a cursory glance at the factors here reveals the unreasonableness of exercising jurisdiction over Caddy.

(1) Caddy's contacts with the United States are infinitesimal and he has not purposefully interjected into America's affairs. Even if Caddy's alleged violation of the Lanham Act and passive website do constitute interjection (which the court finds they do not), the extent of that interjection is slight.

(2) Although Caddy once worked in the Bay Area, the burden on him to defend suit in California appears significant, given that he lives in England, and owns no property, has no employees, agents or any other contact with California, other than his website. Moreover, potential witnesses and evidence in this case are over 5,000 miles away.

(3) As for the potential conflict with England's sovereignty, the Ninth Circuit has noted: "Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." Id. at 1126. Caddy's dual citizenship complicates the analysis, and at a minimum, raises concerns about potential sovereignty conflicts.

(4) The underlying dispute involves a trademark infringement action by an American corporation against an English/American entrepreneur. The U.S. interest in adjudicating this suit appears moderate. America does have an interest in protecting its corporate citizens and their trademarks.

(5) The "most efficient resolution" factor "involves a comparison of alternative forums." Id. Suit could be brought in England under the European Union Council Regulation 40/94, the law governing use of trademarks. It would probably be more efficient for Pebble Beach to bring its claim in the English court. If Pebble Beach prevails in England, they can get complete relief if Caddy is ordered to stop using the Pebble Beach mark. In contrast, if

Pebble Beach were to proceed and prevail here, it may still have to seek enforcement of the judgement in England.  Furthermore, even if Pebble Beach prevails on its claim in the United States, because of the differences in trademark law between the E.U. and the U.S., Pebble Beach might still have to re-litigate the same issues again in an English court.

(6) "Convenient and effective" relief of Pebble Beach's claim would be served by maintaining the suit in America, however resolution here would might not impact Caddy's use of the Pebble Beach mark in locations other than the United States.

(7) As noted above, an alternative forum exists in England.

Given the existence of an alternative and efficient forum, the lack of purposeful interjection, the burden on Caddy, the complication of Caddy's dual nationality, the burden Caddy faces if forced to defend suit in America and the overall lack of contacts that Caddy has with the United States, the exercise of personal jurisdiction over Caddy in this case would be unreasonable.

In accordance with the foregoing, the court finds that Caddy's motion to dismiss for lack of personal jurisdiction must be GRANTED.  Consequently, the court does not reach the motion to dismiss for insufficiency of service of process and all other motions by the parties currently pending before the court, including Caddy's motion for a protective order and his motion for a stay of discovery, are rendered moot.[3]

This order fully adjudicates the matters listed at nos. 15, 17, 18, 29, and 33 on the clerk's docket for this case, and all other pending matters.  The clerk is ordered to close the file.

**IT IS SO ORDERED.**

Dated:  March 1, 2004

_____/s/_____
PHYLLIS J. HAMILTON
United States District Judge

---

[3] In making its findings, the court did not rely on the declaration of Fiona Parsons in support of Caddy's motion to dismiss and, therefore, there is no need to strike the Fiona Parson's declaration as requested by Pebble Beach.